**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Lee Walden, Jr., | No. CV 99-559-TUC-RCC |
| Petitioner, | <u>DEATH PENALTY CASE</u> |
| vs. | |
| | **ORDER** |
| Dora Schriro, et al., | |
| Respondents. | |

Petitioner Robert Lee Walden, Jr. is a state prisoner who filed a Petition for Writ of Habeas Corpus alleging that he is imprisoned and sentenced to death in violation of the United States Constitution. Pending before the Court is Petitioner's Motion for Discovery, Expansion of the Record and Evidentiary Hearing. (Dkt. 140.)[1] Respondents filed an opposition to the motion, and Petitioner filed a reply. (Dkts. 142, 146.) Petitioner's motion is denied because he has not demonstrated that development is warranted.

## **<u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

On July 31, 1992, a jury convicted Petitioner of first degree murder, four counts of sexual assault, two counts of sexual abuse, one count of aggravated assault, two counts of dangerous kidnapping, one count of kidnapping, one count of dangerous burglary, one count of burglary and one count of robbery involving three victims over a six-week time period. Pima County Superior Court Judge James C. Carruth sentenced Petitioner to death for the

---

[1] "Dkt." refers to the documents in this Court's case file.

murder and to prison terms for the other offenses. On direct review, the Arizona Supreme Court affirmed Petitioner's convictions and sentences. *See State v. Walden*, 183 Ariz. 595, 905 P.2d 974 (1995). Petitioner filed a petition for post-conviction relief ("PCR") with the trial court on September 30, 1996, which was dismissed on January 9, 1997. Petitioner filed a second PCR petition on January 9, 1998, which was dismissed on January 5, 1999. Petitioner filed a Petition for Review to the Arizona Supreme Court from the denial of his second PCR petition, which was summarily denied on March 30, 1999.

## **LEGAL STANDARD FOR DISCOVERY AND EVIDENTIARY HEARING**

### **Discovery**

Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for *good cause*, authorize a party to conduct discovery under the Federal Rules of Civil Procedure, and may limit the extent of discovery." Rule 6(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (emphasis added). Thus, unlike the usual civil litigant in federal court, a habeas petitioner is not entitled to discovery "as a matter of ordinary course," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see Campbell v. Blodgett*, 982 F.2d 1356, 1358 (1993), nor should courts allow him to "use federal discovery for fishing expeditions to investigate mere speculation," *Calderon v. United States Dist. Ct. for the N. Dist. of Cal. (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996); *see also Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999)(habeas corpus is not a fishing expedition for petitioners to "explore their case in search of its existence") (quoting *Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). Whether a petitioner has established "good cause" for discovery under Rule 6(a) requires a habeas court to determine the essential elements of the petitioner's substantive claim and evaluate whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

### **Evidentiary Hearing**

Historically, the district court had considerable discretion to hold an evidentiary

hearing to resolve disputed issues of material fact. *See Townsend v. Sain*, 372 U.S. 293, 312, 318 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *and limited by* § 2254(e)(2); *Baja v. Ducharme*, 187 F.3d 1075, 1077-78 (9th Cir. 1999); Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court judge shall determine if an evidentiary hearing is required).  That discretion is significantly circumscribed by § 2254(e)(2) of the AEDPA. *See Baja*, 187 F.3d at 1077-78.

Section 2254 provides that:

> *If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –*
>
> (A) the claim relies on –
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).  The Supreme Court has interpreted subsection (e)(2) as precluding an evidentiary hearing in federal court if the failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  *Williams v. Taylor*, 529 U.S. 420, 432 (2000).  A hearing is not barred, however, when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." *Id.*; *see Baja*, 187 F.3d at 1078-79 (allowing hearing when state court denied opportunity to develop factual basis of claim).

When the factual basis for a particular claim has not been fully developed in state court, the first question for a district court is whether the petitioner was diligent in attempting to develop the factual record. *See Baja*, 187 F.3d at 1078 (quoting *Cardwell v. Greene*, 152 F.3d 331, 337 (4th Cir. 1998), *overruled on other grounds*, *Bell v. Jarvis*, 236 F.3d 149 (4th

Cir. 2000)). The diligence assessment is an objective one, requiring a determination of whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435. For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney "fails" to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court. *See id*. at 438-39, 442; *Alley v. Bell*, 307 F.3d 380, 390-91 (6th Cir. 2002) (lack of diligence because petitioner knew of and raised claims of judicial bias and jury irregularities in state court, but failed to investigate all the factual grounds for such claims).

Absent unusual circumstances, diligence requires that a petitioner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437; *see Bragg v. Galaza*, 242 F.3d 1082, 1090 (9th Cir.) (finding no diligence because petitioner neither requested an evidentiary hearing in the trial court nor filed a state habeas petition), *amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001). The mere request for an evidentiary hearing, however, may not be sufficient to establish diligence if a reasonable person would have taken additional steps. *See Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) (failed to present affidavits of family members that were easily obtained without court order and with minimal expense); *Koste v. Dormire*, 345 F.3d 974, 985-86 (8th Cir. 2003) (no effort to develop the record or assert any facts to support claim); *McNair v. Campbell*, 416 F.3d 1291, 1299-1300 (11th Cir. 2005) (no development of evidence available through himself, family members and literature, and no appeal of denial of funds and hearing); *Cannon v. Mullin*, 383 F.3d 1152, 1176-77 (10th Cir. 2004) (lack of diligence if petitioner does not proffer "evidence that would be readily available if the claim were true.")

In sum, if this Court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court, then the Court may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions. If, however, the petitioner

has not failed to develop the factual basis of a claim in state court, the Court will then proceed to consider whether a hearing is appropriate or required under the criteria set forth by the Supreme Court in *Townsend*. 372 U.S. 293; *see Baja*, 187 F.3d at 1078 (quoting *Cardwell*, 152 F.3d at 337); *Horton, II v. Mayle*, 408 F.3d 570, 582 n.6 (9th Cir. 2005).

Pursuant to *Townsend*, a federal district court *must* hold an evidentiary hearing in a § 2254 case when: (1) the facts are in dispute; (2) the petitioner "alleges facts which, if proved, would entitle him to relief;" and (3) the state court has not "reliably found the relevant facts" after a "full and fair evidentiary hearing," at trial or in a collateral proceeding. *Townsend*, 372 U.S. at 312-13; *cf. Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (upholding the denial of a hearing when petitioner's allegations were insufficient to satisfy the governing legal standard); *Bashor v. Risley*, 730 F.2d 1228 (9th Cir. 1984) (hearing not required when claim must be resolved on state court record or claim is based on non-specific conclusory allegations). In addition, the Court established six circumstances under which there is presumptively no "full and fair hearing" at the state level:

(1) the merits of the factual dispute were not resolved in the state hearing;

(2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(4) there is a substantial allegation of newly discovered evidence;

(5) the material facts were not adequately developed at the state-court hearing; or

(6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id*. at 313. In any other case in which diligence has been established, the district court judge "has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." *Id*. at 318 (noting that if a "habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, [the judge] may, and ordinarily should, accept the facts as found in the hearing.").

**MOTIONS DISCUSSION**

**Claims 1-3, 10-14, 19, 25, 26, 33, and 34:  Discovery**

Petitioner requests discovery regarding Claims 1-3, 10-14, 19, 25, 26, 33, and 34. As to all of these claims, Petitioner requests thirty-four subpoenas, fourteen subpoenas duces tecum, and twenty categories of depositions, most of which include numerous deponents. Petitioner contends that he has made specific allegations in his petition demonstrating that he is entitled to relief on the claims at issue and, therefore, there is good cause to allow full development of his allegations. Respondents oppose the request, arguing that Petitioner fails to explain how each request supports a particular claim. In reply, Petitioner asserts he has identified the relevance of the sought-after evidence to his claims. The Court disagrees.

Petitioner's motion is substantively deficient and fails to identify how specific evidence would provide the necessary support for each claim. In an earlier order, the Court instructed Petitioner that as to "each claim" he was required to identify the facts to be developed, what evidence would support those facts, and why the evidence was not developed in state court. (Dkt. 115 at 28.) His motion does not satisfy that requirement for a single claim and is, therefore, subject to dismissal.

More significantly, Petitioner fails to satisfy Rule 6's good cause standard. To satisfy the standard Petitioner recognizes that the Court must find that the requested discovery will allow Petitioner to prove his claims. This determination can only be made on a claim-by-claim basis, an analysis which Petitioner has not provided. Contrary to Petitioner's representation, a review of the requested discovery demonstrates that much of the evidence sought has nothing to do with the individual claims as to which it is requested. For example, Claim 11 alleges a violation of due process based on the admission of gruesome photographs of the murder victim, and Claims 25 and 26 allege there was insufficient evidence to support the F(6) aggravating factor. The many unrelated discovery requests include: all communications regarding other suspects (subpoena 11), treatment records for the sexual assault victims (subpoenas 21, 22), personnel files from the Tucson Police Department, Pima County Sheriff's Department and Pima County Attorney's Office (subpoenas duces tecum

1-3), and depositions of serologists and latent print examiners (depositions 9-12). Additionally, most or all of the claims for which discovery is requested are record-based claims for which evidentiary development is not warranted; this conclusion is supported by the fact that Petitioner raised all of these claims on direct appeal for resolution on the trial record.

For all of the reasons stated above, Petitioner's motion for discovery regarding Claims 1-3, 10-14, 19, 25, 26, 33, and 34 is denied.

### **Claims 6-8, 12, and 16:  Discovery**

Petitioner's motion as to these claims is also substantively deficient and fails to identify how specific evidence would provide the necessary support for each claim. As noted above, Petitioner was required to identify the facts to be developed, the evidence that would support those facts, and explain why the evidence was not developed in state court as to each claim. (Dkt. 115 at 28.) His motion does not satisfy that requirement for these claims and is, therefore, subject to dismissal.

Claims 6 and 8

Claims 6 and 8 allege that Petitioner's constitutional rights were violated because he was forced to use four of his peremptory strikes to remove jurors that should have been stricken for cause. Claim 6 alleges that the trial court erred in failing to ask follow-up questions of prospective jurors Shew, Gardner, and Pierson after each one of them exhibited bias, and Claim 8 alleges that the trial court erred in not excusing prospective juror Vandenberg after she acknowledged actual bias. Petitioner requests depositions of Shew, Gardner, Pierson, and Vanderburg.

The Supreme Court holds there is no constitutional violation when a defendant uses peremptory strikes to remove jurors that should have been stricken for cause, if he was accorded the number of challenges allowed by law and he does not contend the jury who sat the trial was actually biased. *United States v. Martinez-Salazar*, 528 U.S. 304, 316-17 (2000). The fact that *Martinez-Salazar* involved the use of only one peremptory challenge does not distinguish it, as Petitioner contends, because the critical facts remain the same –

Petitioner was allotted the correct number of peremptories and he does not contend that the trial jury was biased. Even if *Martinez-Salazar* was not directly on point, Petitioner would be precluded from habeas relief because there was no clearly established Supreme Court law governing this issue in 1995 when the Arizona Supreme Court denied relief on these claims. *See* 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 381 (2000) (precluding habeas relief if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner). Claims 6 and 8 are denied on the merits as a matter of law; therefore, the motion for discovery as to these claims is denied.

Claim 7

Claim 7 alleges that the trial court violated Petitioner's right to an impartial jury by excusing prospective juror Roth, citing her work schedule as a pretext for dismissing her based on her opposition to the death penalty.[2] Petitioner does not clearly set forth the constitutional claim he is asserting; therefore, the Court addresses the two claims it has discerned Petitioner may be alleging.[3] First, to the extent Petitioner is alleging that his right to a jury drawn from a fair cross-section of the community was violated by the dismissal of persons opposed to the death penalty (Dkt. 124 at 44), it is without merit. Petitioner's constitutional right to a jury selected from a fair cross-section of the community applies only to jury panels or venires, not to petit juries, which is the target of Petitioner's allegation in

---

[2] In the Amended Petition, Petitioner references only prospective juror Roth but, in the merits brief, Petitioner alleges the same facts as to prospective juror Stark. Because it was not included in the petition, no claim regarding juror Stark is before the Court for consideration and it will not be reviewed. Further, Petitioner did not fairly present a claim to the Arizona Supreme Court regarding juror Stark. (*See* Appellant Opening Br. at 15-17.) If Petitioner were to return to state court now to raise this issue it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Thus, this issue is technically exhausted but procedurally defaulted.

[3] Petitioner references an abuse of discretion standard, however, that standard is used in direct appeal cases regarding claims that are not of constitutional magnitude; that standard does not apply to this proceeding. *See United States v. Salamone*, 800 F.2d 1216, 1229 (3d Cir. 1986); *United States v. Jones*, 722 F.2d 528, 529 (9th Cir. 1983).

Claim 7.  *See Lockhart v. McCree*, 476 U.S. 162, 173 (1986).  Additionally, to prevail on a fair cross-section claim, a litigant must prove: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979).  Petitioner has not alleged any of the necessary factors for a fair cross-section claim; most critically, allegations regarding one juror do not satisfy the group requirement.

Second, to the extent Petitioner is alleging that his death sentence is invalid because the exclusion of juror Roth led to a jury predisposed to the death penalty (Dkt. 124 at 44), the claim is without merit because Petitioner's death sentence was imposed by a judge not the jury.  Further, the Supreme Court has expressly stated that the striking of jurors based on their views of the death penalty is not relevant to a conviction: "We simply cannot conclude, either on the basis of the record before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction." *Witherspoon v. Illinois*, 391 U.S. 501, 518, 523 n.21 (1968).

In sum, Petitioner has not set forth, and the Court is not aware of, any clearly established Supreme Court law indicating that the Arizona Supreme Court's denial of this claim was contrary to, or an unreasonable application of, such law.  Therefore, Petitioner cannot obtain habeas relief on this claim.  *See* 2254(d)(1); *Williams v. Taylor*, 529 U.S. at 381.  Claim 7 is denied on the merits as a matter of law, and the accompanying motion for discovery is denied.

Claim 12

Claim 12 alleges, in relevant part, that Petitioner's right to a fair trial was violated by the playing of prejudicial 911 calls to the jury.  Petitioner requests depositions of each juror regarding the impact of that evidence on his right to a fair trial.  It is self-evident that, when analyzing a claim of trial court error based on the admission of evidence, a reviewing court

assesses only the evidence that was before the trial court; thus, this is strictly a record-based claim. *See Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir.1992) (stating that no evidentiary hearing is required if "there are no disputed facts and the claim presents a purely legal question"). The record-based nature of this claim is bolstered by the fact that Petitioner raised it only on appeal and the state supreme court resolved it based solely on the state court record.

Additionally, it is firmly established in the common law that juror testimony is inadmissible to impeach a jury verdict. *Tanner v. United States*, 483 U.S. 107, 117 (1987). Exceptions to the rule are recognized only in situations in which an "extraneous influence" is alleged to have affected the jury's verdict. *Id.* Strong policy considerations underlie the rule:

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation – to the destruction of all frankness and freedom of discussion and conference.

*Id.* at 119-20 (quoting *McDonald v. Pless*, 238 U.S. 264, 267-68 (1915)).

The rule has been codified in both the Arizona Rules of Criminal Procedure and the Federal Rules of Evidence. Arizona prohibits the admission of testimony or affidavits that inquire "into the subjective motives or mental processes which led a juror to assent or dissent from the verdict." Ariz. R. Crim. P. 24.1(d). The federal rules likewise prohibit testimony "as to any matter or statement occurring during the course of the jury's deliberations or the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict." Fed. R. Evid. 606(b). It is clear from both the common law and state and federal rules that the juror evidence Petitioner wishes to discover in support of Claim 12 is improper. Moreover, consideration of such evidence for the purpose of assessing prejudice would provide encouragement to habeas petitioners to harass

jurors about their decision-making process, in contravention of the policy concerns underlying the common law rule regarding post-verdict juror testimony. Discovery regarding Claim 12 is denied.

Claim 16

Claim 16 alleges that Petitioner's right to an impartial jury was violated by the trial court's denial of a mistrial based on a potentially threatening phone call received by juror Pierce; Petitioner requests depositions of juror Pierce and the trial court's bailiff. Juror Pierce was questioned on the record during the trial regarding the details of the phone call and his reaction to it (RT 7/31/92 at 2-6)[4], and the trial court (*id.* at 10-11) and Arizona Supreme Court made findings to support their decisions denying the claim, *see Walden*, 183 Ariz. at 612, 905 P.2d at 991. No further development of the issue was sought at the trial court level or in post-conviction as the claim was raised on direct appeal based strictly on the state-court record.

First, Petitioner has not identified any material issues of fact that need to be developed for the Court to resolve this claim. Second, to the extent Pierce or the bailiff possess additional information, Petitioner did not make a reasonable attempt to develop it in state court. *See Bragg*, 242 F.3d at 1090 (finding lack of diligence based, in part, on petitioner's failure to take advantage of state collateral proceedings). Because Petitioner was not diligent in developing this claim, the Court is barred from holding an evidentiary hearing on the merits, pursuant to § 2254(e)(2); therefore, there is no good cause for discovery because any evidence developed in discovery could not be considered by the Court. *See Boyko*, 259 F.3d at 792 (finding that discovery should not be allowed to augment the merits of a petitioner's claims unless he was diligent); *Cherri v. Braxton*, 131 F. Supp.2d 756, 775-76 (E.D. Va. 2000); *Charles v. Baldwin*, No. CV-97-380-ST, 1999 WL 375591, at *3 (D. Or. Apr. 14, 1999), *aff'd*, 49 Fed. Appx. 715, 718, 2002 WL 31395774, *2 (9th Cir. 2002); *Murphy v. Bradshaw*, No.

---

[4] "RT" refers to reporter's transcript. The original reporter's transcripts and certified copies of the trial and post-conviction records were provided to this Court by the Arizona Supreme Court on November 18, 2004. (Dkt. 62.)

- 11 -

C-1-03-053, 2003 WL 23777736, *2 (S.D. Ohio 2003); *Owens v. Guida*, No. 00-2765, 2002 WL 1398544, *3 (W.D. Tenn. Jan. 9, 2002); *Abu Jamal v. Horn*, No. 99-5089, 2001 WL 827468, *2, *4 (E.D. Pa. July 20, 2001). Petitioner's request for discovery on Claim 16 is denied.

### Claims 3, 14, 33, and 34:  Evidentiary Hearing

The Court instructed Petitioner that, as to each claim for which he intended to seek an evidentiary hearing, he was required to:  identify the facts to be developed; identify what evidence would support those facts and why each fact is relevant to each claim; explain why the claim was not developed in state court and why the lack of development was not due to a lack of diligence by Petitioner; identify the material facts in dispute and how, if proven, they would entitle Petitioner to relief; and discuss whether the state court held a full and fair hearing and found the necessary facts. (Dkt. 115 at 28-29.) Petitioner's motion is deficient in that it does not detail any of the information required by the Court to determine whether an evidentiary hearing is permitted or warranted; therefore, it is subject to dismissal.

The Court is statutorily barred from holding an evidentiary hearing if Petitioner was not diligent in attempting to develop the factual basis of a claim in state court. *See* 28 U.S.C. § 2254(e)(2). Although Petitioner sets forth this legal standard, he does not address it nor apply it to these claims. Rather, as to each claim, he states summarily, "[b]ecause no factual development was allowed in state court, this Court is free to hold its own evidentiary hearing." (Dkt. 140 at 33.) This summary argument fails to address the relevant question – whether Petitioner made a reasonable effort in state court to develop the claim in light of the information known to him. Similarly, Petitioner has not demonstrated that he can satisfy the threshold requirement for an evidentiary hearing–that there be material facts in dispute requiring resolution–nor does he explain how he would be entitled to relief if he proved particular facts. Despite the deficiencies of the motion, in light of the Court's independent obligation to determine whether an evidentiary hearing is warranted, *see* Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, the Court has conducted a limited review of the relevant issues and finds that Petitioner is not entitled to an evidentiary hearing as to any of these claims.

### Claim 3

Claim 3 alleges that the trial court erred in denying the dismissal or severance of counts 5 through 10 based on the state's failure to preserve exculpatory evidence, specifically the vaginal swab from victim Kristina Velasco's sexual assault kit. The trial court held a hearing on Petitioner's motion to dismiss these counts, at which time Petitioner presented evidence from nurse Stephanie Frederick and Tucson Police Department criminalists Quentin Peterson and Alan Hatch. (RT 7/8/92 at 9-79.) The State presented testimony from Tucson Police Department detective Brian Jones. (*Id.* at 80-110.) Petitioner did not indicate there were other witnesses or evidence he wished to present at the hearing. (*See id.* at 8-118.) At trial, Dr. Kevin Lewis testified regarding his participation in the sexual assault examination. (RT 7/15/92 at 206-26.) No further development of the issue was sought at the trial level or in post-conviction as the claim was raised on direct appeal based strictly on the state-court record.

Petitioner now requests a hearing to present the testimony of nurse Frederick, Dr. Lewis, and employees of the Tucson Police Department, Tucson General Hospital and Department of Public Safety with knowledge of the chain of custody of this evidence and general evidence protocol. All of the proposed witnesses were known at the time of the state court hearing and most of them provided some testimony. To the extent they possess additional information not previously developed, Petitioner did not make a reasonable attempt to develop it in state court. Because Petitioner was not diligent and does not allege that he can satisfy the requirements of §§ 2254(e)(2)(A) & (B), this Court is barred from granting an evidentiary hearing with respect to the merits of Claim 3. To the extent Petitioner's actions could be considered diligent, it appears the state court held a full and fair hearing on this issue. Additionally, Petitioner has not alleged what facts the proposed witnesses would testify to, or as to what material dispute these witnesses have relevant information. In sum, Petitioner is not entitled to an evidentiary hearing as to Claim 3.

### Claim 14

Claim 14 alleges the trial court erred in precluding Petitioner from cross-examining

witness Vicki Blanar about whether she had been on a "beer run" shortly before identifying Petitioner in a photographic lineup as the person who sexually assaulted her. Petitioner requests a hearing to present testimony from Blanar, Detective Woolridge, Mark Allen Civello, Dawn Hay, Daniel Marshall and Ann Thomson. Petitioner raised this claim on direct appeal, and the Arizona Supreme Court upheld the trial court's ruling. *Walden*, 183 Ariz. at 612, 905 P.2d at 991. When analyzing a claim of trial court error based on the admission of evidence, a reviewing court assesses only the evidence that was before the trial court; thus, this is strictly a record-based claim. *See Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir.1992) (stating that no evidentiary hearing is required if "there are no disputed facts and the claim presents a purely legal question"). Claim 14 is very narrow, and the excluded evidence is known. The record-based nature of this claim is bolstered by the state supreme court's treatment of it on direct appeal, which looked only at the state court record to resolve the issue. Because this claim must be decided based on the state court record, evidentiary development is not warranted.

Additionally, Petitioner could have attempted to develop additional supporting evidence during his PCR proceeding, but he raised this claim only on direct appeal. *See Bragg*, 242 F.3d at 1090 (finding lack of diligence based, in part, on petitioner's failure to take advantage of state collateral proceedings). Because Petitioner did not make a reasonable attempt to develop the factual basis of this claim in state court and does not allege that he can satisfy the requirements of §§ 2254(e)(2)(A) & (B), this Court is barred from granting an evidentiary hearing with respect to the merits of Claim 14. Additionally, Petitioner has not alleged what facts these witnesses would testify to, or as to what material dispute these witnesses have relevant information.

### Claims 33 and 34

Claim 33 alleges the State failed to disclose *Brady* material relevant to Petitioner's mitigation presentation until after the mitigation hearing. Claim 34 alleges prosecutorial misconduct based on each of the following actions independently and cumulatively: (1) withholding of *Brady* material relevant to mitigation; (2) referencing a subsequent assault

conviction and pending burglary charge during sentencing; and (3) making inflammatory remarks about Petitioner's dangerousness during sentencing.

Petitioner requests a hearing to present testimony from attorneys and other staff of the prosecutor's office who were exposed to potential *Brady* material.[5] A successful *Brady* claim requires three findings: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the issue of guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The state court record contains the allegedly suppressed mitigating material and the time of its disclosure is not disputed. Thus, it appears to the Court that there is no material factual dispute regarding this claim and an evidentiary hearing is not warranted. Additionally, if Petitioner believed factual development was necessary, he could have attempted to develop it during his PCR proceeding, but he raised this claim only on direct appeal. *See Bragg*, 242 F.3d at 1090 (finding lack of diligence based, in part, on petitioner's failure to take advantage of state collateral proceedings). Because Petitioner did not make a reasonable attempt to develop the factual basis of this claim in state court and does not allege that he can satisfy the requirements of §§ 2254(e)(2)(A) & (B), this Court is barred from granting an evidentiary hearing with respect to the merits of Claims 33 and 34.

**Claim 31: Discovery, Expansion of the Record, and Evidentiary Hearing**

Claim 31 alleges that the trial court failed to properly consider all mitigating evidence proffered in violation of Petitioner's Eighth and Fourteenth Amendment rights. In particular, Petitioner alleges that new evidence was disclosed to the court for the first time at sentencing and the record indicates it was not taken into account prior to the court issuing the sentence.

Petitioner requests expansion of the record and an evidentiary hearing to develop and present additional mitigating evidence. By its own terms, as alleged by Petitioner, resolution of Claim 31 must be based solely on the information presented to the trial court at, or prior

---

[5] Petitioner appears to be requesting an evidentiary hearing only as to the portion of Claim 34 alleging a Brady violation; therefore, the Court will address only subpart 1. Additionally, subparts 2 and 3 of Claim 34 are, on their face, record-based claims.

to, sentencing. Additional mitigation evidence developed since that time has no bearing on whether the trial court failed to consider evidence before it. There is no factual dispute underlying Claim 31, as it is based strictly on the state court record. Because the Court cannot consider additional mitigating evidence in resolving this claim, the request for discovery, expansion of the record and an evidentiary hearing is denied as to Claim 31. *See Hendricks*, 974 F.2d at 1103.

Accordingly,

**IT IS ORDERED** that Petitioner's Motion for Discovery, Expansion of the Record and Evidentiary Hearing (Dkt. 140) is **DENIED**.

**IT IS FURTHER ORDERED** that Claims 6, 7, and 8 are **DENIED** on the merits as a matter of law.

**IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or Respondents file a Motion for Reconsideration of this Order, such motion shall be filed within fifteen (15) days of the filing of this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-3329.

DATED this 6th day of October, 2006.

_____
Raner C. Collins
United States District Judge